George Albert **WILLIAMS**, Appellant,

v.

**DISTRICT OF COLUMBIA**, Appellee.

No. 4037.

District of Columbia Court of Appeals.

Argued Oct. 31, 1966.

Decided March 7, 1967.

Glen O. Robinson, Washington, D. C., with whom John E. Vanderstar, Washington, D. C., was on the brief, for appellant.

David P. Sutton, Asst. Corp. Counsel, with whom Milton D. Korman, Acting Corp. Counsel, Hubert B. Pair, Acting Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge:

Alleging three errors, George Albert Williams appeals from his conviction of using "profane language, indecent and obscene words" on a public sidewalk in violation of D.C.Code § 22–1107 (1961). He had been charged by information in two counts: one, that he did "use profane language, indecent and obscene words," [1] and, two, "under circumstances such that a breach of the peace may be occasioned thereby did congregate with others on a public street and did refuse to move on when ordered by the police" [2] to do so. The case was tried without a jury. At the conclusion of the government's testimony, the court, under the authority of Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L. Ed.2d 176 (1965), granted appellant's motion to dismiss the latter charge. Appellant then took the stand and several witnesses

---

1. § 22–1107. Unlawful assembly—Profane and indecent language.

It shall not be lawful for any person or persons within the District of Columbia * * * to curse, swear, or make use of any profane language or indecent or obscene words * * * in any street, avenue, alley, road, highway * * * or in any place wherefrom the same may be heard in any street, avenue, alley * * *

2. § 22–1121. Disorderly conduct—Generally.

Whoever, with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby—
* * * * *
(2) congregates with others on a public street and refuses to move on when ordered by the police;
* * * * *
shall be fined * * * or imprisoned * * * or both.

testified on his behalf. At the conclusion of the case, the court found him guilty of using profanity in a public place.

## I

■■ Relying on the provisions of the Jencks Act,[3] appellant asserts as error the failure of the government to produce immediately upon the demand of his counsel a prior written statement made by the arresting officer. This statement had been made in reply to a complaint filed against the officer stemming from appellant's arrest. The officer did not have the statement with him, and the court offered appellant a short recess to enable the officer to produce it and submit it to the court. Appellant's counsel, however, stated he did not wish a continuance for this purpose and concluded his cross-examination of the officer.

Although we entertain serious doubt as to the applicability of the Jencks Act,[4] it is not necessary to reach this point as the trial judge apparently assumed the statement was subject to production and examination under Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and attempted to comply with the dictates of that case and the act which it spawned. Having failed to accept the offer of a continuance in order that the document in question could be produced, appellant cannot now complain—and we cannot find—that his right to cross-examination was prejudiced. Harrison v. United States, 115 U.S.App. D.C. 249, 318 F.2d 220 (1963).[5] A recess is often necessary in connection with the production or study of material under the Jencks Act.[6] One here would not have unfairly disrupted cross-examination by the defense. When appellant's counsel decided to go ahead with his cross-examination without the statement, there was no obligation on the part of the trial judge to take any further action.

## II

■ Appellant also maintains that the qualifying language of § 22–1121, the general disorderly conduct statute—"under circumstances such that a breach of the peace may be occasioned thereby"—must be read also into § 22–1107. We do not agree. § 22–1107 contains no provision making a consequential or probable breach of the peace an element of an offense under that section. As applicable here, it simply provides that it is unlawful "to * * * use profane language * * * in any place wherefrom the same may be heard." When the charge against appellant under § 22–1121 was dismissed under the authority of *Shuttlesworth*, there was removed the need for the trial judge to find from the evidence presented that a breach of the peace was threatened by appellant's offensive language.

■ There are compelling reasons for the insertion of the qualifying language into § 22–1121.[7] Laws which prohibit generally certain forms of speech and movement must be predicated upon some justifiable interest of the state in preserving the peace, welfare and morals of the community.

---

3. 18 U.S.C. § 3500(b) (1964).

4. The Jencks Act, by its terms, applies only to criminal prosecutions brought by the United States in Federal courts. See Noel v. State, 215 N.E.2d 539 (Ind. 1966), which rejected its application to state criminal prosecutions.

5. See also, United States v. Gibson, 310 F.2d 79, 82 (2d Cir. 1962).

6. 18 U.S.C. § 3500(c) (1964). See, e. g., Hilliard v. United States, 115 U.S.App. D.C. 86, 317 F.2d 150 (1963).

7. See Rockwell v. District of Columbia, D.C.Mun.App., 172 A.2d 549 (1961), where the leader of the American Nazi Party was convicted for disorderly conduct under § 22–1121 for using abusive language under circumstances naturally tending to create a breach of the peace. Cf. Allen v. District of Columbia, D.C. App., 187 A.2d 888 (1963).

Statutes not so qualified necessarily run afoul of rights under the First Amendment to speak openly on matters of public or private concern, to freely associate and to engage in those activities which the First Amendment of the Constitution, as interpreted by the courts, has dictated citizens may do without restriction. It is therefore fundamental that enactments like § 22–1121 must contain qualifying language and that such qualifications must be applied within the framework of the "clear and present danger" test,[8] otherwise they must fall as violating the standards of the First Amendment.

 Profane language has never been entitled to protection under the First Amendment.[9] We have had occasion to pass upon this exact contention in a recent decision, Duncan v. District of Columbia, D.C.App., 219 A.2d 110 (1966), where we rejected the argument that to proscribe public profanity as an offense per se would raise constitutional questions. The prohibition of and, if required, the prosecution for the use of obscene and profane language in public may be upheld upon the interest of the state in preserving community moral standards.

The statement of proceedings and evidence reveals that appellant and four other men were gathered in a semicircle on a sidewalk early on a Saturday evening at a time when pedestrian traffic was quite heavy. Two police officers approached them, asked that they move on, and then continued their patrol. Two or three hundred feet down the street one of the officers looked back and observed that the group had not dispersed. He returned, informed the men they were blocking traffic, and again requested that they move. All complied except appellant, who stated loudly, "No G-- d-- policeman" could make him move. The officer explained he was in violation of the law, to which appellant replied, "No s-- of a b----" was going to make him move. Ignoring the pleas of his wife and of a companion who also urged him to move, appellant taunted, "I dare you to lock my G-- d--- a-- up." The officer then undertook to arrest appellant, a scuffle ensued, and appellant was taken into custody.

 In our judgment the language used by appellant was clearly insulting, degrading and abusive, and, assessed within the framework of existing case law and the statute under which appellant was convicted, it justified the finding of the trial judge that he was guilty of violating § 22–1107.

### III

Appellant further contends that as his refusal to move on was not a chargeable offense his arrest was illegal and any abusive language on his part was justifiable as an attempt by him to resist "by any manner or means which may have been reasonably necessary to retain his freedom."[10] There is a flaw in this argument: The cases cited by appellant in support of his position involve arrests *before* the obscene words were used; here appellant was arrested *after* he

8. Gitlow v. People of State of New York, 268 U.S. 652, 668–671, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). See generally Corwin, The Constitution of the United States 869–870 (1963 ed.).

9. Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Cantwell v. State of Connecticut, 310 U.S. 296, 309–310, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Rockwell v. District of Columbia, D.C.Mun.App., supra, footnote 7 at 172 A.2d 551.

10. City of Columbus v. Guidotti, 160 N.E. 2d 355, 81 Ohio Law Abst. 33 (Ct.App. 1958). See also, People v. Tinston, 6 Misc.2d 485, 163 N.Y.S.2d 554 (Magis. Ct.1957). Compare Curtis v. United States, D.C.App., 222 A.2d 840 (1966), where it was held appellant had a right to raise her voice in protesting her illegal arrest for vagrancy; Abrams v. United States, 99 U.S.App.D.C. 46, 237 F.2d 42 (1956), upholding conviction of appellant for assault upon and serious injury to a policeman while resisting illegal arrest on the ground that the right to resist did not extend to killing an officer or the infliction of serious bodily harm.

had uttered the objectionable words. That they were about a police officer and directed to him does not provide an excuse or justification for the abusive language. Furthermore, the cases cited by appellant reflect a background of abusive or insulting language by the officers, or mutual hostility between the defendant and the policemen, malicious acts, or physical or verbal abuse by the officers that would tend to infuriate a citizen. Such provocation is absent here. While the officers may have misconstrued their duty in ordering appellant and his friends to disperse, nothing has been presented to show that this was the result of anything but an honest mistake and an effort to persuade appellant and his companions that their assembly on the sidewalk was interfering with the orderly progress of heavy pedestrian traffic at the particular time and location. Although the other men in the group complied, appellant carried his personal resentment beyond reasonable objection. As there is a responsibility upon a police officer to be circumspect in the course of his work in his relationships with private citizens, so is there a like responsibility on the part of citizens to refrain from insults, profane and obscene words, and uncalled-for remarks directed personally toward an officer.[11] He is not required to submit to unjustified abuse when he is engaged in the required performance of his duties.

■ We rule that appellant's arrest for the use of profane language, indecent and obscene words, heard in a public place, was valid and that there was sufficient evidence to support his conviction.

Affirmed.

11. Report of the President's Commission on Crime in the District of Columbia 204 (1966).