[Crim. No. 11822. In Bank. Apr. 22, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES
JOSEPH DAVIS, Defendant and Appellant.

A. L. Wirin, Fred Okrand, Laurence R. Sperber, Mitchell S. Shapiro, Richard E. Posell and Anita Rae Shapiro for Defendant and Appellant.

Alexander H. Pope as Amicus Curiae on behalf of Defendant and Appellant.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Michael T. Sauer, Deputy City Attorney, for Plaintiff and Respondent.

BURKE, J.—Defendant, who was convicted of violation of section 404.6 of the Penal Code, enacted in 1966, challenges the constitutionality of the section.[1] As hereinafter appears, we have concluded that the various attacks on the statute lack merit, and that the judgment should be affirmed.

Defendant has chosen to appeal on a settled statement, which discloses only that he was convicted in the trial court

---

[1]Section 404.6: "Every person who with the intent to cause a riot does an act or engages in conduct which urges a riot, or urges others to commit acts of force or violence, or the burning or destroying of property, and at a time and place and under circumstances which produce a clear and present and immediate danger of acts of force or violence or the burning or destroying of property, is guilty of a misdemeanor.

"This section shall not apply to, nor in any way affect, restrain, or

and that it is stipulated, for the purpose of this appeal, "that appellant was not a member, agent or employee of a labor organization engaged in activity by or on behalf of a labor organization on the date charged in the complaint." Accordingly, we are not informed as to what acts or conduct of defendant gave rise to his conviction.

Defendant first contends that the second paragraph of section 404.6 (*ante* fn. 1) "exempts labor organizations" from the proscriptions of the first paragraph, thereby violating the equal protection clause of the Fourteenth Amendment of the United States Constitution. The People deny that organized labor activities are excluded, but agree that such an exclusion would deny equal protection.

The common sense construction of the section is that it subjects both union and nonunion persons alike to criminal punishment if they do an act or engage in conduct proscribed by provisions of the first paragraph. The second paragraph merely declares the intent of the Legislature that the provisions of the first paragraph are not to be construed to prohibit *lawful* labor union activity of a character which does not fall within the conduct described in the first paragraph. (Cf. *In re Zerbe* (1964) 60 Cal.2d 666, 668-669 [36 Cal.Rptr. 286, 388 P.2d 182]; Pen. Code, § 555.2.) Moreover, the classification line drawn is not one between persons, but rather between unlawful conduct and constitutionally protected conduct.

The familiar rules are that statutes are to be given a reasonable and common sense construction which will render them valid and operative rather than defeat them (see *County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [3] [195 P.2d 17]; *People* v. *Mulholland* (1940) 16 Cal.2d 62, 69 [3] [104 P.2d 1045]; *Great Western etc. Products, Inc.* v. *J. A. Wathen etc. Co.* (1937) 10 Cal.2d 442, 446 [2] [74 P.2d 745]), and that if " 'the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the

---

interefere with, otherwise lawful activity engaged in by or on behalf of a labor organization or organizations by its members, agents or employees."

Penal Code, section 404, which defines "riot," reads: "Any use of force or violence, disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot."

Constitution.' " *(County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 801 [4] [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R. 3d 555], quoting from *County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [2] [55 P.2d 206]; see also *In re Klor* (1966) 64 Cal.2d 816, 821 [8] [51 Cal.Rptr. 903, 415 P.2d 791]; *People* v. *Superior Court* (1937) 10 Cal.2d 288, 298 [4] [73 P.2d 1221].)

■ Applying these rules of reasonableness and common sense to the statute in question it becomes readily apparent that the Legislature did not intend that those engaged in labor activities be free to urge a riot or to urge others to commit acts of force or violence or to burn or destroy property, while making it a crime for other persons to urge the same violent or destructive acts. The Legislative Counsel's Digest for Assembly Bill No. 201 (Pen. Code, § 404.6, here at issue) states that section 404.6 "does not apply to *lawful* labor activity." (Italics added.) It is equally apparent that the second paragraph of the section was added by the Legislature from an abundance of caution to make certain that the statute would not be allowed to interfere with *lawful* labor practices. The Legislature utilized the same cautionary technique in dealing with a section proscribing loitering near industrial plants.[2] The phrase "otherwise lawful" as used in the second paragraph of section 404.6 means lawful labor activity other than activity proscribed by the section. Thus reasonably interpreted the second paragraph does not purport to make the first paragraph inapplicable to persons acting on behalf of labor organizations, nor violate the equal protection clause.

■ It is equally clear that nothing in the statute as drawn renders it vague or overly broad or constitutes an impermissible limitation on freedom of speech, in violation of the First and Fourteenth Amendments to the United States Constitution or of section 9 of article I of the California Constitution.

Contrary to defendant's suggestion, the section does not fail to give adequate warning of what constitutes a penal offense when it provides for punishment of every person who "urges others" to commit acts of force or violence or to burn or destroy property. ■ "Urge" is a word of common

---

[2]Penal Code, section 555.2, which prohibits loitering about industrial plants, contains similar language to protect lawful picketing by labor organizations. (See also section 552.1.)

and ordinary usage, and the point at which the proscribed urging occurs will depend in each instance on the point at which the speaker utters the words or indulges in other conduct urging that the violent or forcible acts or the burning or destruction be done. In *Feiner* v. *New York* (1951) 340 U.S. 315, 317 [95 L.Ed. 295, 298, 71 S.Ct. 303], the court after describing the conduct of the accused as *"urging* that they [his Negro listeners] rise up in arms and fight for equal rights,'' (italics added) affirmed a state court conviction of disorderly conduct.[3] The conviction of disorderly conduct in *Terminiello* v. *Chicago* (1949) 337 U.S. 1 [93 L.Ed. 1131, 69 S.Ct. 894], cited by defendant, was reversed because the involved city ordinance as construed by the trial court in its instructions to the jury ''permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest. A conviction resting on any of those grounds may not stand . . . .'' (P. 5 of 337 U.S. [93 L.Ed. p. 1135]) (See also *People* v. *Huss* (1966) 241 Cal.App.2d 361, 365-369 [51 Cal.Rptr. 56].) To persons of ordinary understanding, the urging of others to acts of force or violence or to burn or destroy property, as proscribed by section 404.6, is neither similar nor comparable to speech which merely stirs to anger, invites public dispute, or brings about a condition of unrest.

 Defendant also errs in his contention that the section is vague due to inclusion of the phrase ''clear and present and immediate danger.'' The term ''clear and present danger'' has long been used by the courts to distinguish between constitutionally permissible limitations on speech and limitations which run afoul of the constitutional guaranties. (See *Schenck* v. *United States* (1919) 249 U.S. 47, 52 [63 L.Ed. 470, 473-474, 39 S.Ct. 247]; *Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 309 [84 L.Ed. 1213, 1220-1221, 60 S.Ct 900, 128 A.L.R. 1352]; *Terminiello* v. *Chicago* (1949) *supra*, 337 U.S. 1, 4 [93 L.Ed. 1131, 1134]; *Cox* v. *Louisiana* (1965) 379 U.S. 559, 564-566 [13 L.Ed.2d 487, 492-493, 85 S.Ct. 476]; *Weaver*

---

[3]See also *Fox* v. *Washington* (1915) 236 U.S. 273, 277 [59 L.Ed. 573, 575, 35 S.Ct. 383], affirming a conviction against a claim of vagueness under a state statute which by its terms punished the circulation of publications ''having a tendency to encourage or incite the commission of any crime,''—language which the state court had construed as confined to *''encouraging* an actual breach of law.'' (Italics added.) The accused publication was read as *advocating the commission of the crime* of indecent exposure. (*Winters* v. *New York* (1948) 333 U.S. 507, 510 [92 L.Ed. 840, 847, 68 S.Ct. 665].)

v. *Jordan* (1966) 64 Cal.2d 235, 244 [9] [49 Cal.Rptr. 537, 411 P.2d 289].)

There is no unconstitutional vagueness in charging an accused wtih knowledge of the meaning or import of such a phrase as applied to his acts or conduct, by speech or otherwise, if he "urges a riot, or urges others to commit acts of force or violence, or the burning or destroying of property."

█ As emphasized in *Cox* v. *Louisiana* (1965) 379 U.S. 536, 553-555 [13 L.Ed.2d 471, 483-484, 85 S.Ct. 453], illegal conduct is not protected merely because it is in part initiated, evidenced, or carried out by language. "[U]tterance in a context of violence can lose its significance as an appeal to reason and become part of an instrument of force. Such utterance was not meant to be sheltered by the Constitution." (*Drivers Union* v. *Meadowmoor Co.* (1941) 312 U.S. 287, 293 [85 L.Ed. 836, 841, 61 S.Ct. 552, 132 A.L.R. 1200].) "[T]he character of every act depends upon the circumstances in which it is done." (*Schenck* v. *United States, supra,* p. 52 of 249 U.S. [63 L.Ed. p. 473].)

Nor will the courts sanction "riotous conduct in any form or demonstrations . . . which conflict with properly drawn statutes . . . designed to promote law and order, protect the community against disorder, regulate traffic, safeguard legitimate interests in private and public property, or protect . . . essential governmental functions." (*Cox* v. *Louisiana, supra,* 379 U.S. 559, 574 [13 L.Ed.2d 487, 498] ; see also *Chaplinsky* v. *New Hampshire* (1942) 315 U.S. 568, 571-574 [86 L.Ed. 1031, 1034-1037, 62 S.Ct. 766] ; *Cantwell* v. *Connecticut, supra,* p. 308 of 310 U.S. [84 L.Ed. p. 1220] : "No one would . . . suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, . . . or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious.")

█ What has been said above also disposes of defendant's suggestion that the statute is overbroad and "could conceivably be applied to punish a speaker because of an adverse reaction on the part of hostile onlookers." If the "adverse reaction" is a response to acts or conduct by the speaker "which urges a riot, or urges others to commit acts of force or violence, or the burning or destroying of property" within the terms and under the circumstances set forth in

section 404.6, then the speaker will be subject to punishment under the provisions of that section; otherwise, he will not.

In short, section 404.6 is a "statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power . . . ." It is not too vague or too broad to meet the requirements of due process, nor does it substantially or unreasonably impinge upon the guaranty of free speech. (See *Chaplinsky* v. *New Hampshire* (1942) *supra,* 315 U.S. 568, 573-574 [86 L.Ed. 1031, 1036-1037].)

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.