Wayne Lee RODGERS, Appellant,

v.

UNITED STATES and District of Columbia,
Appellees.

No. 5856.

District of Columbia Court of Appeals.

Argued Oct. 7, 1971.

Decided April 21, 1972.

Lois R. Goodman, appointed by this
court, for appellant.

Raymond Banoun, Asst. U. S. Atty., with
whom Thomas A. Flannery, U. S. Atty.,
John A. Terry and Thomas H. Queen,
Asst. U. S. Attys., were on the brief, for
appellee United States.

David P. Sutton, Asst. Corp. Counsel,
with whom C. Francis Murphy, Corp.
Counsel, and Richard W. Barton, Asst.
Corp. Counsel, were on the brief, for ap-
pellee District of Columbia.

Before HOOD, Chief Judge, and GAL-
LAGHER and PAIR, Associate Judges.

HOOD, Chief Judge:

In a concurrent trial before a judge and
jury, the judge found appellant guilty of
disorderly conduct,[1] and the jury found him
guilty of destruction of property[2] but ac-

1. D.C.Code 1967, § 22–1121(1).

2. *Id.* § 22–403.

quitted him of assault.[3] Appellant makes a feeble attack on the destruction of property conviction, but we find no merit in it. His attack on the disorderly conviction requires more consideration.

Appellant was arrested following a series of incidents which occurred in and around the Crampton Auditorium on the Howard University campus. On that night a blues concert was being held in the auditorium outside of which a large crowd had gathered.

Appellant, who had no ticket, made numerous attempts to gain entry to the concert. He first presented an invalid press pass which was not accepted. He then repeatedly attempted to enter the auditorium by carrying instruments for band members. This ploy also failed. Appellant then attempted to enter through the basement accompanied by a large group of people. He finally kicked the glass out of a portion of one of the doors in the main entrance. In the course of attempting to gain entry appellant sought the assistance of the crowd outside by shouting obscenities at the campus policemen inside the auditorium and by threatening to kick down one of the doors if the crowd would follow. These activities continued for approximately 2 hours until three members of the University Special Police Force approached appellant, placed him under arrest after a scuffle and turned him over to the Metropolitan Police Department.

■ Appellant attacks his disorderly conduct conviction on four grounds. He first claims the information was insufficient. The information, filed under D.C. Code 1967, § 22–1121, the pertinent part of which is set out below,[4] charged that appellant did:

. . . under circumstances such that a breach of the peace might be occasioned thereby act in a manner as to annoy, disturb, interfere with, obstruct and be offensive to others by *Loud Boisterous and fighting* in violation of Section 22–1121(1) of the District of Columbia Code. (Emphasis supplied).[5]

It is appellant's contention that the information is insufficient in that it fails to charge that he engaged in any activity with an *intent* to provoke a breach of the peace or under circumstances which *threaten* a breach of the peace. We disagree. This court has held that an intent to provoke a breach of the peace is not an essential element in the proof of disorderly conduct. Sams v. District of Columbia, D.C.App., 244 A.2d 479 (1968) ; Rockwell v. District of Columbia, D.C.Mun.App., 172 A.2d 549 (1961). It has likewise been held that proof of an actual breach of the peace is not required under § 22–1121. Stovall v. District of Columbia, D.C.App., 202 A.2d 390 (1964) ; Scott v. District of Columbia, D.C.Mun.App., 184 A.2d 849 (1962). It is sufficient that the alleged conduct be under circumstances such that a breach of the peace might be occasioned thereby.[6]

■ Appellant further contends that the evidence presented at trial was not sufficient to support his conviction. It is argu-

---

3. *Id.* § 22–504.

4. D.C.Code 1967, § 22–1121 provides:
    Whoever, with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby—
    (1) acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others ;

    . . . . .
    shall be fined not more than $250 or imprisoned not more than ninety days, or both. (June 29, 1953, 67 Stat. 98, ch. 159, § 211a.)

5. The italicized portion of the charge was entered in longhand in a space provided on a preprinted information form.

6. *See also* Carroll v. President & Com'rs of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) ; Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961) ; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) in support of the proposition that acts and words which might occasion a breach of the peace are sufficient to invoke state power to regulate.

ed that the conviction should be reversed because appellant's "conviction is unsupported by any evidence to show . . . that anyone other than the police were annoyed or disturbed". We disagree. Appellant was not convicted merely for conduct which was annoying or disturbing to the policemen present, but rather, he was convicted for disorderly conduct carried out under circumstances whereby a breach of the peace might have been occasioned.

The Supreme Court in Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L. Ed. 1213 (1940), concluded that not only violent acts but acts and words likely to produce violence on the part of others were included within the purview of breach of the peace. Here we have evidence of a course of action including both acts and words which can be said to be likely to produce violence among some or all of a crowd estimated at between 300 and 400 persons. Appellant's conduct over the 2-hour period with which we are concerned included several instances falling within the purview of § 22–1121 which may be deemed disorderly conduct. In examining his conduct as to interfering with others, it is readily apparent that appellant's conduct interfered with the orderly progression of events related to attendance at a concert where such attendance was limited to those persons holding valid tickets, a requirement which appellant did not meet at any time during the course of the evening. The

record plainly reveals numerous attempts by appellant to gain entry into the auditorium. Each attempt invoked counter-efforts by the special police whose task it was to maintain order during the concert. These actions on the part of the appellant were obstructive to persons holding valid tickets.

By their very nature appellant's actions would tend to slow down and even halt orderly ingress to the auditorium. The holders of valid tickets, seeking orderly admission, have a right to peaceful enjoyment of the concert without unwarranted disturbances by trespassers.[7] It is these same ticket holders to whom appellant's actions would be patently offensive, as well as annoying and disturbing. Heard v. Rizzo, 281 F.Supp. 720, 741 (E.D.Pa.1968), aff'd, 392, U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968).

In line with appellant's contention that his conduct was not disorderly, it is interesting to note that while appellant is not charged with incitement to riot under § 22–1122 his actions appear to bring him within the scope of that statute.[8] Therefore, it is readily apparent that appellant's conduct is punishable under § 22–1121 and the evidence supports the finding of the trial court to that effect.

As a third challenge, appellant alleges that § 22–1121(1) is constitutionally vague and overbroad. Careful examination of the

---

7. It is well established that an invitor such as Howard University was at the time of this occurrence, has a duty to use reasonable care in maintaining safe surroundings for its invitees. This duty extends to protection from injury as a result of the actions of third parties including trespassers. Such was the situation here and the university was fulfilling its duty to the ticket holders by providing the services of its special police force. See 4 Am.Jur.2d Amusements and Exhibitions § 59 (1962) ; 86 C.J.S. Theaters and Shows § 41 (1954).

8. D.C.Code 1967, § 22–1122 (Supp.IV, 1971) provides in pertinent part:
   (c) Whoever willfully incites or urges other persons to engage in a riot

shall be punished by imprisonment for not more than one year or a fine of not more than $1,000, or both.

. . . . .

(Dec. 27, 1967, Pub.L. 90–226, § 901, title IX, 81 Stat. 742.)

See United States v. Jeffries, 45 F.R.D. 110 (D.D.C.1968) ; People v. Bundte, 87 Cal.App.2d 735, 197 P.2d 823 (1948) ; People v. Davis, 68 Cal.2d 481, 67 Cal. Rptr. 547, 439 P.2d 651 (1968) ; State v. Boles, 5 Conn.Cir. 22, 240 A.2d 920 (1967) ; Commonwealth v. Hayes, 205 Pa.Super. 338, 209 A.2d 38 (1965) ; Commonwealth v. Sciullo, 169 Pa.Super. 318, 82 A.2d 695 (1951).

statute, the facts of this case and the construction given this and similar statutes compels us to disagree.

Appellant utilizes this particular challenge to raise the specter of legislative abridgment of first amendment freedoms. This case represents a classic example of regulation of conduct through statute and within the scope of the power of the state. There is presented here no exposition of ideas as pointed out in Cantwell v. Connecticut, *supra* at 310, 60 S.Ct. 900. Nor is there presented any peaceful conduct or, for that matter even mere loud, boisterous or flamboyant conduct such as was granted constitutional protection in Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). Here we clearly have provocative conduct or language which undertakes incitement to riot. Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1950); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). However, in light of recent decisions of the Supreme Court, we feel compelled to closely examine § 22–1121(1) and to construe it accordingly. Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 214 (1971). These decisions hold that state court construction of statutes broadly written to provide local authorities with an effective means of preserving peace and order within the community is essential to establishing the scope of the statute for consideration as to constitutionality by federal courts.

The general rule to be applied in cases where the statute consists of several parts is that the primary purpose or intent of the entire act is controlling.[9] Therefore, each subdivision of a statute must be construed in light of that primary purpose.

The intent of Congress in enacting § 22–1121 may best be determined by looking to the Act of Congress which that section was enacted to supplement. That Act is entitled, "An act for the preservation of the public peace and the protection of property within the District of Columbia." 27 Stat. 322, ch. 320, approved July 29, 1892. Certain provisions of the Act, as amended, remain a part of the law of the District of Columbia, having been specifically incorporated into the District of Columbia Code by the Law Enforcement Act of 1953. 67 Stat. 93, approved June 29, 1953. Among those provisions remaining is § 22–109 which provides for prosecution of offenses under the original Act in the name of the District of Columbia. Section 22–109 has been amended by the Law Enforcement Act of 1953 to include prosecutions for violations of § 22–1121, thereby bringing that section within the scope of the intent of Congress as expressed in the Act of 1892.

Appellant has bottomed his constitutional challenge on language from the decision of the Supreme Court in Coates v. Cincinnati, *supra*. However, the statute in question here does not make a crime "out of what under the Constitution cannot be a crime" nor is it "aimed directly at activity protected by the Constitution." *Coates, supra* at 616, 91 S.Ct. at 1689. Further, it has not, in its history been construed or applied in such a manner.[10]

---

9. 2 Sutherland, Statutory Construction § 4704 (3d ed. 1943).

10. District of Columbia v. Jordan, D.C. App., 232 A.2d 298 (1967), holding that "Peeping Tom" activities are covered by § 22–1121(1); Stovall v. United States and District of Columbia, D.C.App., 202 A.2d 390 (1964), holding that the repeated striking and shoving of a woman on a public thoroughfare is sufficient to constitute disorderly conduct within the scope of § 22–1121; Allen v. District of Columbia, D.C.App., 187 A.2d 888 (1963), holding that carrying a placard proclaiming "More Police Brutality for Reds" and dragging a banner on the ground and trampling it before a crowd protesting al-

Justice Harlan, in the majority opinion in Cohen v. California, *supra,* was careful to point out that the Court in reversing a conviction under the California disorderly conduct statute, was not dealing with a case of a speaker intentionally provoking a hostile reaction from a group. Nor did the Court feel that it was dealing with words "inherently likely to provoke violent reaction." In the case before us, we have a situation including both, thus removing appellant's conduct from the protective cloak of the Constitution.

Here we have a statute which has been considered by the courts of the District on numerous occasions. It has been held to regulate certain classes of conduct which fall within the power of the state to control. The statute is directed to the "preservation of the public peace and the protection of property within the District of Columbia" as evidenced by the title of the Act of Congress which the statute was adopted to supplement. (See dissenting opinion of Judge McGowan in District of Columbia v. Grimes, 131 U.S.App.D.C. 360, 369, 404 F.2d 1337, 1345 (1968).) In addition, the statute is a part of a comprehensive chapter of the D.C.Code directed to the regulation of specifically enumerated classes of conduct ranging from "Affrays" (§ 22–1101) to "False alarm of fire—Prosecution" (§ 22–1119), all clearly classes of conduct well within the power of Congress to regulate through legislation for the District.[11]

Within § 22–1121 are five categories of conduct collectively labeled "Disorderly conduct—Generally." The provision with which we must concern ourselves (§ 22–1121(1)), when read as a part of the entire section, reflects a comprehensive statutory scheme providing the police of the District of Columbia with a means by which they may protect the interest of the community in maintaining peace and good order.

In addition to the construction and application of this statute by the courts of the District, we are able to examine the construction of an identical statutory provision by the New York courts. The New York provision was reviewed by the U. S. Supreme Court in Feiner v. New York, *supra,* and found to be constitutionally sound. In *Feiner,* there was presented a more questionable situation than that before us. There, the courts were faced with the situation of an individual who expressed certain political and social beliefs to a crowd of persons on a street corner. Feiner's speech progressed to a point where he "gave the impression that he was endeavoring to arouse the Negro people against the whites, urging that they rise up in arms and fight for equal rights." *Feiner, supra* at 317, 71 S.Ct. at 305. The Court in assessing the actions of the police in stopping the speech and ultimately arresting Feiner, said, at 320, 71 S.Ct. at 306, citing Cantwell v. Connecticut, *supra:*

When clear and present danger of riot, disorder, interference with traffic upon the public streets, *or other immediate*

---

leged police brutality is *not* sufficient to constitute disorderly conduct within the scope of § 22–1121(1) ; Rockwell v. District of Columbia, D.C.Mun.App., 172 A. 2d 549 (1961), holding ordering of followers into hostile audience to silence hecklers and the resulting assault of one member of the audience was sufficient conduct to sustain a conviction under § 22–1121(1) ; Heilman v. District of Columbia, D.C.Mun.App., 172 A.2d 141 (1961), reversing a conviction on other grounds but holding that driving alongside another's automobile, making remarks and

manipulating an automobile so as to frighten the occupants of the other automobile is disorderly conduct within the scope of § 22–1121(1) ; Carey v. District of Columbia, D.C.Mun.App., 102 A.2d 314 (1954), holding that "Peeping Tom" activities are covered by § 211(a), the predecessor of § 22–1121(1).

11. Our statute is directed at acts and conduct, not at words and language as was the Georgia statute in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed. 2d 408 (Mar. 23, 1972).

*threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious.* (Emphasis supplied.)

The Court went on to point out in *Feiner, supra* at 321, 71 S.Ct. at 306:

It is one thing to say that the police cannot be used as an instrument for the suppression of unpopular views, and another to say that, when as here the speaker passes the bounds of argument or persuasion and undertakes incitement to riot, they are powerless to prevent a breach of the peace. . . .

In the case before us, we have a situation of neither an expression of ideas nor an attempt at argument or persuasion. We clearly have a situation in which the appellant, during a 2-hour course of conduct, after repeated denial of entrance into Crampton Auditorium, went well beyond the bounds of argument or persuasion and embarked upon a clear attempt to generate an assault on the auditorium by a crowd of almost 400 persons. The fact that the assault did not materialize is of little consequence as it is recognized that the police do not have to stand by and await the occurrence of an act of violence before stepping in to control the situation and maintain peace and order. Locke v. Vance, 307 F.Supp. 439, 447 (S.D.Tex. 1969). If the circumstances presented by the instant case do not reveal a clear-cut situation calling for the application of the provisions of § 22–1121(1), we would be hard pressed to hypothesize such a situation.[12]

Affirmed.

---

12. In Carey v. District of Columbia, D.C. Mun.App., 102 A.2d 314, 315 (1954), this court held, in discussing § 22–1121(1) that:

While the statute in question is penal and must therefore be strictly construed, we feel that the defendant's conduct constituted disorderly conduct within the meaning of the statute and that it would be absurd to hold otherwise. . . .

We feel this to be an accurate assessment of the situation in the present case.