Albert GUEORY, Appellant,

v.

DISTRICT OF COLUMBIA et al., Appellees.

No. 13026.

District of Columbia Court of Appeals.

Argued Oct. 4, 1978.

Decided Nov. 15, 1979.

---

Thomas H. Queen, Washington, D. C., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for appellees.

Before GALLAGHER and MACK, Associate Judges, and KORMAN, Associate Judge, Superior Court of the District of Columbia.*

GALLAGHER, Associate Judge:

This is an appeal from verdicts directed in favor of the District of Columbia at the close of appellant's evidence. Appellant had brought suit alleging false arrest and negligence by a Metropolitan Police officer resulting in his being attacked by the officer's police dog. We affirm the directed verdicts on both counts.

Viewing appellant's evidence in a light most favorable to him,[1] it appears that late one Sunday afternoon, appellant was driving home from the grocery store along H Street, N.W., in a Ford Mustang belonging to a friend, and that, at the intersection of 12th and H Streets, N.W., appellant passed a police car driven by Metropolitan Police Officer Malcolm Hall, and made a quick left turn into a vacant lot. Appellant parked the car in the lot as he was permitted to do by its owners, got out of the Mustang, and, groceries in hand, began walking towards his apartment. Meanwhile Officer Hall pulled into the lot behind appellant and informed him that he had just committed a traffic violation.[2] Appellant denied doing anything illegal. Officer Hall then requested to see appellant's operator's permit and automobile registration. Appellant produced his operator's permit and a registration from his wallet, but the registration turned

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. Appellant's evidence consisted of his own testimony and the testimony of the arresting officer. Where there were disputes in their testimony, we resolved them in favor of appellant.

2. There was dispute in the testimony as to whether the traffic violation which Officer Hall told appellant he had just committed was making an illegal left turn into the parking lot or passing Officer Hall on the wrong side of the road. We regard this dispute in the testimony as irrelevant to the issues on appeal.

out to be that of his own car rather than the Mustang he had been driving. When Officer Hall informed appellant that the registration he had given him was to a different car, appellant explained the situation to him and stated that the Mustang registration must be either among the papers in his wallet, in the Mustang glove compartment, or in his apartment down the street. Officer Hall again requested the registration. When it was not forthcoming, he initiated a computer check on the Mustang's tags. While Officer Hall was doing this, appellant walked from the driver's side of the police car where he had been standing over to the passenger side of the Mustang about two car-lengths away. At that point Officer Hall got out of his car, ran over to appellant, and stated that he had not told appellant he could leave. Appellant began explaining that he was going to look in the glove compartment of the Mustang to see if the registration was in there. He was prevented from doing so, however, because Officer Hall grabbed him by the arm. Appellant then told him to "take his damned hand off of me," and something to the effect of "Goddam it. Take your [f___] hands off me." When Officer Hall did not, appellant pushed it off. He asked if he was under arrest. Officer Hall did not answer, but for the second time grabbed appellant by the arm to keep him from going into the glove compartment. Once again appellant pushed it off. All during this time appellant was becoming increasingly angry and several passersby on H Street began watching the altercation. Officer Hall warned appellant that he could be arrested for disorderly conduct if he did not cooperate, but appellant kept protesting and pushing the officer's arm. Finally, Officer Hall believed the people watching from across the street were being bothered by appellant's behavior. He arrested appellant for disorderly conduct.

While this was going on, Officer Hall's police dog, Shane III [hereinafter Shane], was barking from his cage in the back seat of Officer Hall's car. Shane, an eighty-five pound white German shepherd, was trained to come out of the car and attack anyone fighting with the officer he accompanied. Officer Hall had left both the cage gate unlocked and a car window open when he pulled in to inform appellant of his traffic violation, thus making it possible for Shane to attack if he were in trouble.[3] When Officer Hall grabbed appellant's arm the second or third time, Shane left the car and ran over to where appellant and Officer Hall were struggling. Appellant then swung Officer Hall around as a shield between himself and Shane, but the dog managed to go between Officer Hall's legs and began biting appellant's legs. The two men then hit the ground while Shane continued to attack appellant. Quickly appellant ceased putting up a fight. Officer Hall then brought the dog to bay. Appellant was taken into custody and released later that night.

■ On this presentation of facts we cannot say that the trial court erred in directing verdicts against appellant. As to the false arrest count, we conclude that appellant's own evidence shows that Officer Hall had probable cause to arrest him for disorderly conduct. In civil cases the test is whether the officer had a reasonable good faith belief that the suspect has committed or is committing a crime, based on the facts and circumstances then known to him. *Woodward v. District of Columbia*, D.C. App., 387 A.2d 726, 727 (1978); *Wade v. District of Columbia*, D.C.App., 310 A.2d 857, 862–63 (1973). Facts sufficient to convict are not necessary.

Officer Hall had ample grounds for a reasonable good faith belief that appellant's conduct was disorderly under D.C.Code 1973, § 22–1107 (unlawful assembly—profane and indecent language). The Circuit Court of Appeals for the District of Columbia has interpreted § 22–1107 to be validly applied when a suspect runs from a police

---

**3.** The decision whether to leave the gate unlatched was left up to the individual officer's discretion by police regulations.

officer's civil inquiry and shouts back "a 4 letter expletive on a public street, within earshot of passers-by." *Von Sleichter v. United States*, 153 U.S.App.D.C. 169, 172, 472 F.2d 1244, 1246–47, *cert. denied*, 409 U.S. 1063, 93 S.Ct. 555, 34 L.Ed.2d 517 (1972). The Circuit Court of Appeals stressed that it was the *context* that was pertinent in determining if there is probable cause for an arrest for disorderly conduct. The encounter between Officer Hall and Gueory was even more likely to cause a disturbance than the encounter in *Von Sleichter*. Gueory was openly flouting a police officer's request, with inflammatory language and violent motions. Passersby were attracted by the commotion. In such a case, the police officer need not stand by and await the occurrence of violence before he attempts to control the situation with a disorderly conduct arrest. *See Rodgers v. United States*, D.C.App., 290 A.2d 395 (1972) (when defendant's acts and words appeared to bring him within the scope of D.C.Code 1973, § 22–1121, police may make an arrest to maintain law and order before any violent acts occur). In making the arrest, the officer is not protecting himself from the defendant's disturbing language or conduct. *See* Model Penal Code § 250.1, Comment (Tent.Draft No. 13, 1961) (the police are trained to resist provocation, and so are not free to react quickly under disorderly conduct statute; however, there is no First Amendment right to deliberately bait police so as to provoke a violent reaction). Rather, the officer is trying to prevent a breach of the peace. The officer here was well advised to make the arrest, as is shown by the outbreak of a scuffle simultaneously with the arrest.

A case which interprets the disorderly conduct statute as applied by police in volatile confrontations is *Williams v. District of Columbia*, 136 U.S.App.D.C. 56, 419 F.2d 638 (1969), *rev'g* D.C.App., 227 A.2d 60 (1967). The Circuit Court of Appeals for the District of Columbia held that the "language" under § 22–1107 must be such as to threaten a breach of the peace or be so grossly offensive as to be a nuisance; otherwise, the District of Columbia statute would violate First Amendment rights. The circuit court reversed the trial court because the information below had been drawn on the premise that breach of the peace was not essential to the crime. *Id.* 136 U.S.App.D.C. at 66, 419 F.2d at 647. The court did not say that the underlying conduct in *Williams*, openly flouting an officer of the law, would not have amounted to disorderly conduct. Williams' arrest resulted when he told a police officer that "no_ _ s_ _ o_ _ b_ _" was going to make him move and "I dare you to lock my ___ up."

Another demonstration of a valid arrest for disorderly conduct after an altercation with a policeman is *Johnson v. United States*, 125 U.S.App.D.C. 243, 370 F.2d 489 (1966). The defendant in *Johnson* was seen at midnight running from a church when a policeman approached and asked to talk to him. The defendant replied, "Oh no, ___," patted a bulge in his pocket and ran away. Later, he was apprehended and arrested for disorderly conduct. *See also Duncan v. United States*, D.C.App., 219 A.2d 110 (1966) (after police asked him to move along, defendant did so but stated, "no black s_ _ o_ _ b_ _ m_ _ f_ _ cop is going to chase me off the corner"; as police effectuated arrest for disorderly conduct, melee broke out); *cf. State v. Sweeney*, 157 Conn. 485, 255 A.2d 622 (1969) (in response to lawful interrogation, defendant loudly shouted, "I'm being picked on," so that people gathered around).

It is evident that Officer Hall acted with a good faith belief that Gueory was violating D.C.Code 1973, § 22–1107, and that he had a right to arrest Gueroy to avoid a potentially violent outbreak as Gueory's language and actions became more frenzied and passersby were attracted to the commotion. There was therefore no genuine question to be submitted to the jury on the issue of probable cause to arrest.

■ With regard to the negligence count, we conclude that there was no evidence in appellant's case establishing that a standard of care was breached here. *See District of Columbia v. Davis*, D.C.App., 386 A.2d 1195,

1200 (1978); *Jones v. Safeway Stores, Inc.,* D.C.App., 314 A.2d 459, 460 (1974). Appellant argues that officers should not be permitted by police regulations to leave the dogs' cages unlatched when investigating possible crimes unless they have some reasonable apprehension of danger from the situation. There was no evidence introduced that unprovoked attacks on innocent people had occurred in the past by police dogs escaping from police cars. Moreover, Officer Hall testified that an officer can never know in advance when an innocent-enough looking situation is going to become "sticky."[4] Adopting appellant's proposed standard in this case would therefore have amounted to imposing significantly increased risks on the police without any showing of public necessity.

■ As to whether a reasonable juror could have found Officer Hall negligent in this particular case, the analysis is similar. Officer Hall was not breaching any police regulation by leaving Shane's cage unlatched, for the regulations left the decision up to each individual officer's discretion. In exercising this discretion, Officer Hall was aware that dangerous situations often developed from beginnings appearing innocent. He and Shane had worked together for four years, had gone through 16 weeks of training together, Shane had won numerous awards as a result of competitions with other trained police and military dogs for his ability to obey commands, and, most importantly, not once in those four years of working together did Shane make an unprovoked escape from the police car to attack an innocent person. We conclude no reasonable juror could have found Officer Hall negligent on the facts here presented.[5]

*Affirmed.*

4. Tr. at 72.

5. Having concluded that there was no evidence of negligence in this case, it is unnecessary to address the District's other contention, which was that, even assuming Officer Hall was negligent in leaving Shane's cage unlatched, this negligence could not have been the proximate

cause of the attack since the harm which would have deterred a reasonable police officer from leaving it unlatched—namely the possibility of attack by the dog on an innocent person—is not the harm that resulted here because appellant was assaulting a police officer and the dog did what he was trained to do.