Hamid CHEMALALI, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 94–CO–504.

District of Columbia Court of Appeals.

Argued Feb. 14, 1995.
Decided March 20, 1995.

David Tillotson, Washington, DC, for appellant.

Sidney Bixler, Asst. Corp. Counsel, with whom Vanessa Ruiz, Corp. Counsel at the time the brief was filed, Robert Rigsby, Deputy Corp. Counsel, and Rosalyn Calbert Groce, Asst. Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before WAGNER, Chief Judge, TERRY, Associate Judge, and KERN, Senior Judge.

WAGNER, Chief Judge:

Appellant, Hamid Chemalali, was convicted following a bench trial of disorderly conduct under D.C.Code § 22–1121(1) (1989). The information charged that Chemalali, "under circumstances such that a breach of the peace might be occasioned thereby [did] act in a manner as to annoy, disturb, interfere with, obstruct and be offensive to others by acting loud and boisterous, kicking at citizens in violation of Section 22–1121(1) of the District of Columbia Code." He argues on appeal that his conduct did not constitute a crime under the law of the District of Columbia and that his First Amendment rights were violated in that the conduct leading to his arrest and conviction consisted "almost entirely of speech." We conclude that the evidence was sufficient to prove the crime charged and that the conduct for which appellant was arrested and convicted did not implicate his First Amendment rights.

## I.

According to the testimony of Harold Cunningham, a Metropolitan Police officer, the circumstances which occasioned appellant's arrest occurred as follows. Officer Cunningham was engaged in a traffic stop in the 3100 block of M Street, N.W. on November 17, 1993 when a citizen stopped him to report a disturbance across the street and to request assistance before things "got worse." The officer looked across the street and saw appellant and another man walking behind a group of people at whom they were hitting and kicking. Appellant's hitting and swinging motions came within inches of the people, and the officer saw a couple of them look back. The officer called out to appellant and his companion, crossed the street to defuse the situation, and warned them to calm down or they would be arrested for disorderly conduct. Appellant and his companion, who appeared to have consumed alcoholic beverages, began to curse loudly at the officer and at the citizen who had reported them. Among the comments that appellant yelled were "F[——] you. I know my rights. I can walk. This is a public street." Officer Cunningham told the men to leave the area, but

they refused. Appellant and his companion became louder, more excited, and more abusive toward the officer, and they shouted profanities at the officer and at the complaining citizen, who by this time had crossed the street at the officer's behest. The officer called for backup police assistance.

Officer Cunningham testified that people were beginning to come out of the bars in the area and that a bouncer from one of the establishments started over to assist him. According to Officer Cunningham, appellant was "poking his finger and hollering at the other citizens ... that were coming out." A crowd began to form, and appellant was poking his finger at the crowd and saying, "You see what's going on. You see what's going on. This is LA all over again." The officer testified that he was concerned about the crowd forming, as it was his experience that such circumstances might lead to fights erupting among the crowd. After other officers arrived, the police arrested appellant and his companion for disorderly conduct.[1]

## II.

First, appellant argues essentially that the evidence was insufficient to support his conviction under D.C.Code § 22–1121(1). In determining a claim of evidentiary insufficiency, this court views the evidence in the light most favorable to the government, recognizing that it is within the province of the fact finder to weigh the evidence, to determine the credibility of the witnesses, and to draw reasonable inferences from the evidence. *Leonard v. United States*, 602 A.2d 1112, 1114 (D.C.1992) (citations omitted); *In re A.B.*, 556 A.2d 645, 649 n. 8 (D.C.1989). Viewed against that standard, the evidence was adequate to support the conviction.

The statute under which appellant was convicted provides in pertinent part as follows:

Whoever, with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby: (1) Acts in

---

1. Appellant testified in his own behalf, but his testimony is not a part of the record on appeal.

such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others ... shall be fined not more than $250 or imprisoned not more than 90 days, or both.

D.C.Code § 22–1121(1). Appellant contends that there was no evidence that his conduct actually annoyed, disturbed, interfered with, obstructed, or offended anyone as required by the statute. The trial court, crediting the officer's testimony, found otherwise. Specifically, the trial court found that appellant was kicking and jabbing at individuals on the street and that his conduct disturbed those people.[2] The court also determined that appellant's offensive shouting disturbed people present other than the officer.[3] "We are bound by the trial court's factual findings unless clearly erroneous or not supported by substantial evidence." *Holston v. United States,* 633 A.2d 378, 386 n. 10 (D.C.1993) (citations omitted); *accord, Johnson v. United States,* 616 A.2d 1216, 1234 (D.C.1992). This court must defer to the trial court's determinations of credibility. *Id.* The trial court's findings are supported by the record; therefore, we accept them.

Appellant's conduct, as found specially by the court, constituted disorderly conduct within the meaning of the statute. It is apparent that kicking and jabbing at pedestrians on the street are offensive actions which would tend to disturb, annoy and interfere with those individuals, as the trial court found.[4] Such conduct is of the type which is likely to provoke the person against whom it is directed, such that a breach of the peace might occur. Thus, it falls within the prohibition of D.C.Code § 22–1121(1).

 Proof of actual or impending breach of the peace is not required for conviction under the disorderly conduct statute. *Rodgers, supra* note 2, 290 A.2d at 396; *Scott v. District of Columbia,* 184 A.2d 849, 851 (D.C.1962). It is only required that the alleged conduct occur "under circumstances such that a breach of peace may be occasioned thereby." *Rockwell v. District of Columbia,* 172 A.2d 549, 552 (D.C.1961). The police need not await an outbreak of violence before attempting to control the situation by making a disorderly conduct arrest. *Gueory v. District of Columbia,* 408 A.2d 967, 970 (D.C.1979); *Rodgers,* 290 A.2d at 400. We are satisfied that appellant's arrest and con-

---

2. In a case tried without a jury, the trial court need only make a general finding except that upon a "request made before the general finding, [the court shall] find the facts specially." Super.Ct.Crim.R. 23(c). Here, the trial court made its finding of guilt before appellant's counsel requested that the court make specific findings concerning what aspect of appellant's conduct constituted a crime. Nevertheless, the trial court found specially the facts which resulted in the guilty verdict. While the court requested the government to articulate the basis for its determination, and we do not suggest that this is the best way to make findings, the court clearly adopted as its findings the recitation of the facts set forth by the prosecutor. The determination proceeded as follows:

 GOVERNMENT COUNSEL: Your Honor, Officer Cunningham, talked about him kicking at individuals, punching at individuals, and if the Court believes that happened, then, of course, under the case that I just cited [*Rodgers v. United States,* 290 A.2d 395 (D.C.1972)] and under this particular statute, that in and of itself is enough for the Court to find—
 THE COURT: I accept that....
 * * * * * *
 THE COURT: —and I accept the officer's testimony—for other people. I find that this, indeed, was the basis of the officer's [arrest]—

3. The following colloquy between the trial court and defense counsel reflects the court's determination that appellant's conduct disturbed others:

 DEFENSE COUNSEL: Your Honor, for the purposes of my appeal, could you articulate what aspect of their conduct you believe was a crime? Was it the fact that there was a crowd that might have been offended? Was it the fact that they supposedly shouted or were offensive to the police officer?
 THE COURT: It had nothing to do with the police officer.
 DEFENSE COUNSEL: Well, who did the [sic] disturb?
 THE COURT: There were other people there.

4. We reject any contention that the initial stop which led to appellant's arrest was unlawful. *See* D.C.Code § 23–581(a)(1)(B) (1989) (law enforcement officer may arrest without a warrant one whom he has reason to believe is committing an offense in his presence).

viction fell within the strictures of these principles.

However, appellant contends that he was not cited and arrested for kicking, swinging, and poking his fingers at citizens, and therefore, this conduct cannot be relied upon to sustain his conviction under D.C.Code § 22–1121(1). This claim is belied factually by the record. In response to defense counsel's question concerning whether he had arrested appellant essentially for continuing to argue about the incident, the officer testified that it was not just for arguing, but for appellant yelling profanities, drawing people out of the bars, and all the other matters which he had mentioned in his testimony. The other matters about which the officer had testified previously involved appellant kicking and swinging at the people as they walked along the street and later poking his finger at citizens who formed the crowd. The charging information also contains the specific reference to "kicking at citizens." Additionally, Officer Cunningham's police report, about which defense counsel had him testify, in setting forth the circumstances leading to appellant's arrest, makes reference to appellant yelling, kicking and poking his finger at citizens. Thus, appellant's contention that he was not cited, arrested, and convicted for this particular conduct is unfounded.

Appellant also argues that there was no evidence that his yelling and screaming "annoyed, disturbed, interfered with, obstructed, or was otherwise offensive" to anyone other than the police officer. This contention is not borne out by the record. According to the evidence which was credited by the trial court, appellant shouted profanities at the officer, the complaining citizen on the scene, and other people on the street. His words and actions attracted a crowd and caused a bouncer whom the officer knew to start to come to his aid. Moreover, appellant's conduct was not merely loud and boisterous, nor was it designed to express ideas. It consisted primarily of profanities and provocative language. The officer testified that appellant and his companion yelled profanities and became abusive towards him "and the citizens there" and that appellant poked his finger toward the citizens, saying at one point, "You see what's going on. This is LA all over again."[5] Such comments and actions were of the type which seemed to invite some action or reaction from the crowd.

■ Epithets and words of personal abuse are not in any real sense a communication of information safeguarded by First Amendment protections, and such conduct may, under certain circumstances, be subject to punishment as a criminal act. *Rockwell, supra,* 172 A.2d at 551 (quoting *Cantwell v. Connecticut,* 310 U.S. 296, 309–10, 60 S.Ct. 900, 905–06, 84 L.Ed. 1213 (1940)); *see also Rodgers, supra* note 2, 290 A.2d at 400. The fact that during the course of the offensive conduct which led to his arrest, appellant also expressed an idea about his rights, does not mean that he may engage in conduct consisting of kicking, poking, and shouting profanities at citizens with impunity.

We have held that words and actions likely to produce violence on the part of others are included within the purview of breach of the peace. *Rodgers, supra* note 2, 290 A.2d at 397. Appellant argues that the facts which formed the basis for the decision in *Rodgers* bear no resemblance to those present in this case. Appellant is correct that the defendant's conduct in *Rodgers* was far more egregious than appellant's conduct in this case.[6] However, the difference is one of degree. The principles extracted from the *Rodgers* case are applicable to this case. If an indi-

---

**5.** This is an apparent reference to an incident captured on videotape and widely shown on television in which the police in Los Angeles are seen immobilizing a citizen with a stun gun and beating him.

**6.** In *Rodgers* the defendant, in an effort to gain entry to a concert for which he had no ticket, over a two-hour period, "sought the assistance of the crowd outside by shouting obscenities at the campus policemen inside the auditorium and by

threatening to kick down one of the doors if the crowd would follow." 290 A.2d at 396. The court rejected Rodgers' argument that D.C.Code § 22–1121(1) requires for conviction an intent to provoke a breach of the peace. *Id.* The court also rejected his claim of insufficiency of the evidence, concluding that he was convicted of disorderly conduct carried out under circumstances which might occasion a breach of the peace. *Id.* at 397.

vidual engages in actions in a manner to disturb, annoy or be offensive to others under circumstances where a breach of the peace might be occasioned thereby, that individual may be convicted under § 22–1121(1). *Rodgers, supra* note 2, 290 A.2d at 397. Proof of an actual breach of the peace is not required. *Id.* at 396. So long as the alleged offensive conduct rises to the level that a breach of the peace might be provoked by the conduct, it is prohibited by statute. Appellant's conduct was such as to come within the ambit of the statute. Under the circumstances, the officer did not have to await the occurrence of an actual breach of the peace before arresting appellant. *Gueory, supra,* 408 A.2d at 970.[7]

### III.

Appellant also argues that his arrest and conviction under D.C.Code § 22–1121(1) under the facts of this case violate the principle that criminal statutes must be strictly construed. *See FCC v. American Broadcasting Companies,* 347 U.S. 284, 296–97, 74 S.Ct. 593, 600–01, 98 L.Ed. 699 (1954); *United States v. Moore,* 198 U.S.App.D.C. 296, 310, 613 F.2d 1029, 1043, *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980). He contends that the prohibition against engaging in loud and boisterous conduct is addressed in two other sections of the Code, §§ 22–1121(3) and –1107 (1989).[8] He argues that, following the requirement that criminal statutes must be strictly construed, the fact that §§ 22–1121(3) and –1107 set forth specific circumstances under which loud and boisterous conduct is subject to criminal

sanction must mean that the section of the code under which he was charged cannot also be construed as proscribing shouting, yelling or engaging in loud and boisterous conduct. Appellant does not contend that § 22–1121(1) is unconstitutional on its face. He contends only that strict construction principles preclude § 22–1121(1) from being interpreted as making his verbal conduct a crime.

■ The well-established strict construction principle requires that penal statutes be strictly construed. *Moore, supra,* 198 U.S.App.D.C. at 310, 613 F.2d at 1043; *see also American Broadcasting Co., supra,* 347 U.S. at 296, 74 S.Ct. at 600–01. This rule of interpretation means that penal statutes

> are not to be broadened by intendment, and uncertainty respecting their ambit is to be resolved in favor of lenity.

*Moore,* 198 U.S.App.D.C. at 310, 613 F.2d at 1043 (internal footnotes and citations omitted). However, this rule of construction does not require that the law be given its most narrow purpose nor "so strictly [construed] as to defeat the intention of the legislature." *Id.* at 311, 613 F.2d at 1044. It is appellant's position that the statute as applied to his verbal conduct failed to give clear and adequate notice of the type of conduct which would subject him to criminal penalties. A criminal statute must define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103

---

7. In *Gueory,* this court held that the police had ample grounds for a good faith belief that Gueory's conduct was disorderly within the meaning of D.C.Code § 22–1107 (1989), where the defendant openly flouted the police officer's requests during a traffic stop with inflammatory language and violent motions such that passersby were bothered and attracted. 408 A.2d at 969–70. The court observed that in making the arrest, the officer is not protecting himself from the offensive language and conduct, but trying to prevent a breach of the peace. *Id.* at 970. Appellant contends that the holding in *Gueory* is no longer good law in light of the Supreme Court's decision in *Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). We need not decide this issue because, to the extent that *Gueory* can be read properly to sanction a conviction

solely for use of profane language in a public place, its facts are distinguishable from the case before the court. The conduct relied upon to support the appellant's arrest and conviction in this case is not solely verbal conduct protected by the First Amendment.

8. D.C.Code § 22–1121(3) makes it a crime for anyone, with intent to provoke a breach of the peace or under circumstances that a breach of the peace may be occasioned thereby to "shout[ ] or make[ ] a noise either outside or inside a building during the nighttime to the annoyance of any considerable number of persons." D.C.Code § 22–1107 makes it a crime for persons to congregate in a public space and engage in loud and boisterous conduct.

S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *German v. United States,* 525 A.2d 596, 605–06 (D.C.1987).

Appellant concedes that the acts or conduct of the type involved in *Rodgers, supra* note 2, may be properly punishable under § 1121(1). As previously discussed, the conduct in *Rodgers* consisted of the defendant shouting obscenities at policemen and threatening to kick down one of the doors to an auditorium to which he sought admission without a ticket. This court determined in *Rodgers* that the conduct was punishable under § 1121(1) which addresses disorderly conduct "carried out under circumstances whereby a breach of the peace might have been occasioned." 290 A.2d at 397. To advance his position on this issue, appellant seeks to isolate some of his verbal expressions, which standing alone might not be subject to criminal penalty. However, the trial court clearly based its findings on other aspects of appellant's conduct which were set forth in the criminal information. We do not read appellant's argument to challenge these particular grounds as a valid basis for conviction under § 1121(1). We have previously determined in this opinion that the court's finding in this regard was supported by the record. Thus, we need not decide whether the statute might violate due process on the version of the facts which appellant seeks to portray on appeal.

### IV.

Finally, appellant argues that his conviction cannot be upheld because the verdict was a general one, and therefore, there is no way of knowing whether the conviction was based on speech which falls within the protection of the First Amendment. *See Terminiello v. Chicago,* 337 U.S. 1, 5, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949). The record reflects that the trial court specially found the facts.[9] It is clear that the trial court based its verdict on appellant's conduct in kicking and hitting at people in the street. Evidence of this conduct alone was sufficient to support appellant's conviction for disorderly conduct.

9. See discussion in part II and note 2, *supra.*

For the foregoing reasons, the judgment of conviction appealed from hereby is

*Affirmed.*