743 A.2d 1226 (2000)
In re W.H.L., Appellant.
No. 98-FS-301.
District of Columbia Court of Appeals.
Submitted June 15, 1999.
Decided January 20, 2000.
*1227 M. Azhar Khan, Washington, DC, appointed by the court, was on the brief for appellant.
John M. Ferren, Corporation Counsel at the time the brief was filed, and Robert R. Rigsby, Deputy Corporation Counsel, Rosalyn Calbert Groce, Director, Policy and Appeals Branch, and Louis E. Barnett, Assistant Corporation Counsel, were on the brief for appellee.
Before STEADMAN and REID, Associate Judges, and MACK, Senior Judge.
MACK, Senior Judge.
Appellant, W.H.L., was adjudicated delinquent after being found guilty of disorderly conduct under circumstances likely to cause a breach of the peace, D.C.Code § 22-1121 (1995 Repl.). W.H.L. appeals, contending the evidence was insufficient to find him guilty. On the circumstances of this case, we agree and reverse.

I.
The only evidence presented was the testimony of Metropolitan Police Department Officer Durriyyah Habeebullah. Officer Habeebullah testified that on October 6, 1997, she received a call that there had been a shooting in the commercial area of the 2900 block of Martin Luther King Boulevard, Southeast. She and about five or six other police officers responded to the call. When the police could not find a victim, the dispatcher gave them a look-out description of a suspected shooter. The police lined up five to six suspects against a wall, asked for identification, and began to determine if any of the suspects were wanted.
While the suspects were being patted down, W.H.L., then fourteen years old, began to ride his bicycle behind the officers. W.H.L. spoke in a loud voice to the officers, "Y'all petty as s___, F___ y'all." He did this two to three times, ignoring the advice of the officers to move on. At this time, there may have been some people who were across the street from the officers paying attention to what the officers, who had arrived in four or five scout cars, were doing. Officer Habeebullah clearly testified, however, that a crowd had not then gathered.
When W.H.L. reappeared on the scene after going into a store, he left his bicycle and entered a carry-out restaurant next to the area where the officers were holding the suspects against the wall. When W.H.L. came out of the restaurant, Officer Habeebullah asked if his bicycle was registered. W.H.L. responded that it was not. The officer then attempted to check the serial numbers of the bicycle; when she grabbed for the bicycle, W.H.L. began to yell, "Y'all can't take my bike. F___ y'all." Officer Habeebullah testified that W.H.L. yelled this five or six times. It was only after the officer attempted to grab the bicycle that a crowd of ten to fifteen people started to gather. The people in the crowd urged W.H.L. to let Officer Habeebullah see the bicycle.

II.
On cross-examination, Officer Habeebullah testified that she then seized the bicycle, filled out forms, and broadcast that she *1228 was transporting one juvenile to the Traffic Division. She testified that although she had not received a report of a stolen bike or complaint about a registered bike, she had seen somebody else riding the same bicycle the day before. She admitted that she had decided to arrest him before she approached him because he did not move on, and that he did not threaten her or touch her, and that none of the latecoming on-lookers had threatened her, but had in fact urged W.H.L. to cooperate peacefully.
After hearing this testimony, the trial court found W.H.L. guilty of disorderly conduct. The court concluded that after making what might have been legitimate comments initially, W.H.L. crossed the line. Specifically, the trial court concluded that a crowd had gathered in response to boisterous profane comments directed at the police.

III.
A person may be found guilty of disorderly conduct when that person, "with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby ... [a]cts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others ...." D.C.Code § 22-1121 (1996 Repl.). One circumstance where a breach of the peace may be occasioned is where the defendant uses words likely to produce violence on the part of others. Rodgers v. United States, 290 A.2d 395, 397 (D.C.1972).
We look, therefore, to W.H.L.'s conduct as he rode his bicycle behind the police officers yelling obscenities at them. Our case law recognizes that police officers are trained to be more patient than the average person in the face of hostile words:
Police officers are trained to deal with unruly and uncooperative members of the public. A police officer is expected to have a greater tolerance for verbal assaults, ... and because the police are especially trained to resist provocation, we expect them to remain peaceful in the face of verbal abuse that might provoke or offend the ordinary citizen.
In re M.W.G., 427 A.2d 440, 442 (D.C.1981) (citation omitted).
Here, Officer Habeebullah testified that a crowd had not gathered when the youth was riding his bicycle behind six or more officers and loudly voicing obscenities. His profane words, directed solely at these officers, were not likely to produce violence on the part of others. Because police are trained to be more tolerant of such behavior, we cannot conclude that W.H.L., by riding his bicycle behind the officers and voicing obscenities, was engaged in conduct whereby a breach of the peace may occur.
Moreover, because W.H.L. rode his bicycle behind the officers, his action did not disturb, obstruct, or interfere with the officers in the performance of their duty. W.H.L. was not placing himself between the officers and the suspects being questioned and patted down. The police were capable of performing their duties while ignoring W.H.L.'s actions.
Further, W.H.L.'s actions when later approached by Officer Habeebullah did not constitute disorderly conduct. He answered her question. He did not threaten to touch her. His verbal objection was voiced only when she moved to grab the bicycle.
We find the cases relied upon by the appellee to be distinguishable. In Rodgers, supra, the defendant was denied entry to a concert because he did not have a valid ticket. Seeking entry, the defendant shouted obscenities to the police, and threatened to kick down a door to the concert hall if the crowd would follow him. *1229 Id. at 396. The court noted that a breach of the peace includes not only violent acts, but also "acts and words likely to produce violence on the part of others...." Id. at 397 (citing Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)). Because the defendant's conduct was likely to produce violence from the crowd, the court concluded that his conduct interfered with those who held valid tickets to the concert. Id. Similarly, in Chemalali v. District of Columbia, 655 A.2d 1226, 1229 (D.C.1995), we affirmed a conviction of disorderly conduct where the defendant shouted profanities not only at the police, but also at other people who were on the street. The defendant's words attracted a crowd, whom the defendant enticed to civil disobedience by referring to a highly publicized incident of police brutality. Id.[1] This court held that "[s]o long as the alleged offensive conduct rises to the level that a breach of the peace might be provoked by the conduct, it is prohibited by statute." Id. at 1230.
The conduct at issue in this case is markedly different from that of both Rodgers and Chemalali. In both cases, the defendants addressed a crowd that had gathered, apparently in an attempt to invite some reaction against the police. As Officer Habeebullah testified, the crowd only began to gather after she attempted to grab W.H.L.'s bicycle in order to ascertain the serial numbers.[2] At this point, W.H.L.'s words were not aimed at the crowd, but at the officer herself. W.H.L. was not attempting to entice the crowd to act against the police, but in reaction to what he perceived to be an attempt by the officer to seize his bicycle. Indeed, the reaction of the crowd was to urge W.H.L. to allow Officer Habeebullah to see the bicycle. We cannot conclude, therefore, that W.H.L.'s conduct occurred under circumstances where a breach of the peace is occasioned.
Accordingly, W.H.L.'s adjudication of delinquency is hereby
Reversed.
STEADMAN, Associate Judge, dissenting.
I think the majority has applied a cramped interpretation both of the statutory provision and of the evidence.
To prove a violation of D.C.Code § 22-1121(a), a misdemeanor,[1] all that need be shown is that the defendant acted in "a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others" so as to "provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby." (emphasis added). The government is "not required to prove an actual or impending breach of peace." Scott v. District of Columbia, 184 A.2d 849, 851 (D.C.Mun.App.1962). Rather, the prosecution may prove a § 22-1121 violation by proving that a breach of the peace was a possibility given the surrounding circumstances. See Chemalali v. District of Columbia, 655 A.2d 1226, 1229 (D.C. 1995)("So long as the alleged offensive conduct rises to the level that a breach of the *1230 peace might be provoked by the conduct, it is prohibited by statute."); Rodgers v. United States, 290 A.2d 395, 396-97 (D.C. 1972) (Defendant who "sought assistance of the crowd ... by shouting obscenities at the campus policemen ... was not convicted merely for conduct which was annoying or disturbing to the policemen present, but rather ... [he was properly convicted] for disorderly conduct carried out under circumstances whereby a breach of the peace might have been occasioned.")
Examining the evidence here in light of the statutory requirements, I of course apply our oft-repeated and well established standards for review of claimed evidentiary insufficiency:
This court will reverse a conviction on the basis of insufficient evidence only if, after viewing the evidence in the light most favorable to the government, it can be said that the decision is clearly erroneous. Only if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, can we reverse for insufficiency of the evidence.
Foster v. United States, 699 A.2d 1113, 1115 (D.C.1997)(quotations and citations omitted). See also, e.g., Nixon v. United States, 730 A.2d 145, 148 (D.C.1999).
So viewed, the facts here are not overly complicated. Briefly put, a number of police officers, including Officer Habeebullah, were engaged in questioning a group of five or six suspects in a reported shooting. Appellant continued to ride on his bicycle back and forth behind the officers as they conducted their investigation, loudly challenging in obscenities the validity of their activity, despite being asked to move on. It was early of an evening on a much-traveled thoroughfare, both vehicular and pedestrian. Appellant then went into a store. When he emerged Officer Habeebullah, who had seen another individual riding the same or similar bicycle the previous evening and recognizing that bicycle-riding on a sidewalk, as appellant had done, was illegal, questioned appellant about the registration. Appellant responded that his bicycle was not registered and again began loudly berating Officer Habeebullah, resisting her attempts to check his bicycle. As a result of appellant's response, a crowd gathered.
Addressing the majority's particular concerns, it matters little that a crowd had not gathered until near the end of appellant's rant, or that the crowd was not hostile; the authorities cited above show that potentiality of public disorder can give rise to a violation. Nor does it matter that the obscenities were ostensibly directed only at the officers; appellant's comments might reasonably be construed as a "type which seemed to invite some action or reaction" not only from bystanders but from the group of suspects themselves. Chemalali, supra, 655 A.2d at 1229. Also, it is not true that appellant's actions did not affect the officers in the performance of their duty; Officer Habeebullah testified to the contrary.[2] Finally, the doubtful assertion that Officer Habeebullah did not have articulable suspicion to approach appellant does not make irrelevant appellant's subsequent conduct in resisting and berating the officer.[3]Cf. Nelson v. United States, 580 A.2d 114, 117 (D.C.1990)("Congress *1231 has abolished the common law rule in this jurisdiction on the right to resist an unlawful arrest"); D.C.Code § 22-505 (1989).
In my judgment, the record in this case is quite sufficient to support the adjudication of delinquency for the charged offense. Therefore, I must dissent from the majority's reversal of the trial court.
NOTES
[1] The defendant in Chemalali stated, "You see what's going on. This is LA all over again." 655 A.2d at 1229. The court noted, "Such comments and actions were of the type which seemed to invite some action or reaction from the crowd." Id.
[2] Our reading of the record fails to show that Officer Habeebullah had a reasonable articulable suspicion that criminal activity was afoot with respect to W.H.L.'s bicycle. See Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, Officer Habeebullah had no authority to detain W.H.L. in order to investigate whether the bicycle was registered.
[1] The maximum penalty for a violation is a fine not to exceed $250 and imprisonment not to exceed ninety days.
[2] "Q: Officer what would you have been doing had you not been forced to deal with the Respondent? A: I would have been standing right there making sure the persons that we had stopped didn't make a move, didn't try to run until we could get a status on whether they were wanted or not. Q: Okay. Were you able to perform that function while you were dealing with the Respondent? A: No."
[3] In addition to appellant's previous activities in themselves, Officer Habeebullah had seen someone else the previous night riding what she thought was the same bicycle, raising at least a question of ownership related to mandatory registration, 18 DCMR § 1202 ("Mandatory Registration of Bicycles") and appellant had apparently violated the prohibition against bicycle-riding on sidewalks. 18 DCMR § 4029.