Angela **MARTINEZ**, Appellant,

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 07–CT–1176.**

District of Columbia Court of Appeals.

Argued Nov. 17, 2009.
Decided Jan. 28, 2010.

Matthew C. Leefer, Boonsboro, MD, appointed by the court, for appellant.

Janice Y. Sheppard, Assistant Attorney General, with whom Peter Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before RUIZ and THOMPSON, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

After a bench trial, Angela Martinez was convicted of reckless driving and disorderly conduct, for which the trial court imposed consecutive prison sentences of thirty-five days and ten days, respectively. She appeals only her conviction of disorderly conduct, D.C.Code § 22–1321 (2009), contending that (1) the evidence was insufficient to support the conviction, and that in any event (2) the conviction violated her First Amendment right to free speech. We agree that the evidence was insufficient and thus do not reach the constitutional issue. We reverse and remand with directions to enter a judgment of acquittal.

## I.

Officer Sean Hill of the Metropolitan Police Department testified that on February 24, 2007, at approximately 8:45 p.m., as he and his partner were leaving a Wendy's parking lot in the 900 block of Randolph Street, N.W., he observed a Pontiac, operated by a woman (later identified as appellant Martinez) traveling at a high rate of speed from the Safeway parking lot across the street. The Pontiac cut off another vehicle going eastbound and made a wide right turn onto Randolph Street in front of a vehicle traveling westbound. Officer Hill put on his emergency lights and siren and drove toward the Pontiac. He followed as the Pontiac continued to travel at a high rate of speed, and several pedestrians on the crosswalks rushed out of the way of the oncoming vehicle. Within a few blocks, Martinez turned into a gas station at the intersection of Georgia Avenue and Upshur Street, N.W. and stopped at a gas pump. Officer Hill pulled in behind her.

Officer Hill further testified that after he had introduced himself to Martinez, she responded: "What did I do all of a sudden, I didn't do shit." When the officer told Martinez that he had observed her driving recklessly, she got angry, insisted that she was not intoxicated, and loudly and repeatedly used vulgarities such as "I bet your dicks are hard off this," "wait until I get a fucking lawyer," and "you bitch ass police." Officer Hill added that there were passersby and customers in the vicinity, as well as a mechanic who came out of his bay at the gas station garage approximately seventy-five to eighty feet away—all of whom witnessed his interactions with Martinez. The officer and his partner tried to arrest her, but she held her hands to her sides so that they had to push them in order to handcuff her. Martinez did not act violently or threaten violence. Nor did she direct any verbal abuse at the onlookers. Nor, finally, was there any evidence that any bystander reacted with violence or was likely to have done so in response to Martinez's behavior.

Testifying in her own defense, Martinez admitted that she had made a wide right

turn onto Randolph Street, but she insisted that she had not sped or come close to hitting pedestrians. She also denied using profane language toward Officer Hill.

## II.

Martinez moved for judgment of acquittal after the prosecution rested, and she renewed the motion after the defense rested. Both motions were denied. Challenging those rulings, she contends that the evidence at trial was insufficient to prove beyond a reasonable doubt that she had engaged in disorderly conduct.

In reviewing a sufficiency claim, this court will examine the evidence in the light most favorable to sustaining the verdict, and will recognize the right of the trier of fact to determine credibility and draw reasonable inferences from the evidence. *See Jones v. United States,* 716 A.2d 160, 162 (D.C.1998). The motion for judgment of acquittal must be granted if the evidence, viewed in the light most favorable to the government, is such that a reasonable juror must have a reasonable doubt about the existence of any essential element of the crime. *See Curry v. United States,* 520 A.2d 255, 263 (D.C.1987).

Martinez argues that the government failed to prove beyond a reasonable doubt either of the two elements necessary for conviction. D.C.Code § 22–1321 provides in the part relevant here:

> Whoever, with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby: (1) acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others; ... shall be fined not more than $250 or imprisoned not more than 90 days, or both.[1]

She stresses that the government failed to prove that (1) her words and conduct were "annoying, disturbing," etc., and—of crucial importance—that (2) her words and conduct were either "intended," or likely to "occasion," a "breach of the peace." We shall assume, for sake of argument, that Martinez's verbal outbursts as the officers were arresting her tended to "annoy," "disturb," and "offend" at least some of the individuals (other than Officer Hill and his partner)[2] who were witnessing her behavior.[3] But the "breach of the peace" criterion is another, more complicated matter.

---

**1.** The other statutory circumstances (not at issue here) authorizing conviction under D.C.Code § 22–1321 for disorderly conduct, set forth where the ellipsis shows in the text quoted above, are these: "(2) congregates with others on a public street and refuses to move on when ordered by the police; (3) shouts or makes noise either outside or inside a building during the nighttime to the annoyance or disturbance of any considerable number of persons; (4) interferes with any person in any place by jostling against such person or unnecessarily crowding such person or by placing a hand in the proximity of such person's pocketbook, or handbag; or (5) causes a disturbance in any streetcar, railroad car, omnibus, or other public conveyance, by running through it, climbing through windows or upon the seats, or otherwise annoying passengers or employees, ..."

**2.** If the officers were annoyed, etc., that does not count for this purpose; we have said that a "police officer is expected to have a greater tolerance for verbal assaults, ... and because the police are especially trained to resist provocation, we expect them to remain peaceful in the face of verbal abuse that might provoke or offend the ordinary citizen." *In re W.H.L.,* 743 A.2d 1226, 1228 (D.C.2000) (quoting *In re M.W.G.,* 427 A.2d 440, 442 (D.C.1981)).

**3.** Although we assume that the "annoyance" requirement under D.C.Code § 22–1321 is met, it is not at all clear that the evidence would support such a finding. Officer Hill testified that passersby heard the commotion, and that as a result of the noise a garage mechanic at the gas station left his bay to see what was happening. The government, however, provided no evidence that the onlookers were offended or annoyed by Martinez's

We have noted, in reference to the statutory provision at issue here, § 22–1321, that "[o]ne circumstance where a breach of the peace may be occasioned is where the defendant uses words likely to produce violence on the part of others." *In re W.H.L.,* *supra* note 2, 743 A.2d at 1228 (citing *Rodgers v. United States,* 290 A.2d 395, 397 (D.C.1972)) (reversing conviction for disorderly conduct based on appellant's profanities directed at police officers, while crowd gathered without incident, as officers were attempting to grab appellant's bicycle to check registration). More recently, in applying that test in *Shepherd v. United States,* 929 A.2d 417, 417 (D.C. 2007), we reversed a conviction for disorderly conduct attributable to cursing at a police officer who was issuing the appellant a citation for going through a Metro gate without paying the fare. Other patrons had gathered around, occasioning the trial court to find that appellant's language "could have easily provoked a small crowd to engage in hostile activity." *Id.* at 418. Concluding, to the contrary, that the trial court had applied an overly relaxed test, we observed:

> Our decisions . . . teach that the *bare possibility* that words directed to a police officer may provoke violence by others does not suffice to show disorderly conduct; rather the words must create a *likelihood or probability* of such reaction . . . by persons other than a police officer to whom the words were directed. . . .

words or that they even heard the specific words that she spoke, rather than hearing merely the overtones of a disturbance. The trial court's findings did not address impact on the observers:

> With regard to disorderly, you know, I mean I heard the officer say that your client was vile, profane, loud, boisterous and I believe that it what the statute is designed to deal with when, in this instance, a police officer is conducting lawful business.

*Id.* at 419 (emphasis added). Applying this "probability" standard, we held that "the trial judge could not reasonably find beyond a reasonable doubt that appellant's actions were calculated to lead to a breach of the peace." *Id.*[4]

 The same reasoning applies here. There is no evidence that Martinez directed a verbal outburst toward anyone other than a police officer, and there is no evidence that her outburst toward Officer Hill and his partner created the "likelihood or probability" that any of the onlookers would react with violence. This is a pure case of words, not other actions, and no matter how annoying and offensive those words may have been to the onlookers,[5] there is no evidence tending to prove beyond a reasonable doubt that Martinez committed a breach of the peace warranting conviction of disorderly conduct under D.C.Code § 22–1321(1). *W.H.L.* and *Shepherd* control the outcome here.

### III.

As noted earlier, we said in *W.H.L.* that the use of "words likely to produce violence on the part of others" was "[o]ne circumstance where a breach of peace may be occasioned." 743 A.2d at 1228. The government argues that case law applicable here is not narrowly confined to this "one circumstance" considered in *W.H.L.* and *Shepherd.* The government proffers an alternative test derived from a decision

4. Both *W.H.L.,* 743 A.2d at 1228, and *Shepherd,* 929 A.2d at 418, attribute the "probability" standard to *Rodgers v. United States,* 290 A.2d 395 (D.C.1972), in which we traced the formulation to the Supreme Court's decision in *Cantwell v. Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) ("The offense known as breach of the peace embraces . . . not only violent acts but acts and words likely to produce violence in others.").

5. *But see supra* note 3.

of the U.S. Court of Appeals for the District of Columbia Circuit in *Williams v. District of Columbia*, 419 F.2d 638 (D.C.Cir.1969) (en banc). In *Williams*, the court reversed a decision of our predecessor court under D.C.Code § 22–1107 (1967) (now codified at § 22–1307 (2009)), an unlawful assembly provision similar to the disorderly conduct statute we apply here (§ 22–1321). The court said that § 22–1107—authorizing conviction (in the court's words) for "simply the utterance of profane and obscene language in public"— could survive a First Amendment attack only if it could be interpreted to include an additional element: that the language is spoken in circumstances which threaten a breach of the peace. *Id.* at 644–46. The court, however, defined "breach of the peace" more broadly than we have in *W.H.L.* and *Shepherd*. It offered two alternatives: "for these purposes a breach of the peace is threatened either [1] because the language creates a substantial risk of provoking violence, or [2] because it is, under 'contemporary community standards,' so grossly offensive to members of the public who actually overhear it as to amount to a nuisance." *Id.* at 646 (footnotes omitted). The court reversed because the information charging violation of § 22–1107 did not include an allegation that the defendant's words threatened a breach of the peace, an element, according to the court, that must be read into the statute for its survival under the First Amendment.

*Williams'* second, "nuisance" criterion for breach of the peace is not binding on us, notwithstanding *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971), because it is dictum and deals with a similar, but not the same, statute as the one at issue here.[6] But there is an even more compelling reason why *Williams* does not warrant affirmance. The concern expressed in *Williams*, as well as in *W.H.L.* and *Shepherd*, is the First Amendment protection of free speech. The *Williams* court was satisfied that its two-criteria test would comply with the constitutional constraints imposed by *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (affirming conviction under statute interpreted to punish profane or obscene words only when spoken in public under circumstances creating substantial threat of violence). Three years after *Williams*, however, the Supreme Court decided *Gooding v. Wilson*, in which the Court affirmed the order in a habeas proceeding setting aside the conviction of a petitioner who had shouted words at a police officer even more offensive and threatening than those Martinez leveled against Officer Hill and his partner. 405 U.S. 518, 519–20 n. 1, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).[7] The Court held the statute facially invalid because, as construed by the Georgia courts, it did not limit culpability to "fighting" words likely to provoke immediate violence. *Id.* at 522, 528, 92 S.Ct. 1103 (citing *Chaplinsky* ). *See also Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (reversing disorderly conduct

**6.** We held in *M.A.P.* that decisions of the "United States Court of Appeals [for the D.C. Circuit] rendered prior to February 1, 1971 ... like the decisions of this court, constitute the case law of the District of Columbia" unless overruled by this court sitting en banc. 285 A.2d at 312. *Williams* was decided by the D.C. Circuit in 1969, and, although not overruled, does not—as noted in the text— supply a precedent binding here.

**7.** The *Gooding* prisoner had exclaimed, for example: "White son of a bitch, I'll kill you"; "You son of a bitch, I'll choke you to death"; "you son of a bitch, if you ever put your hands on me again, I'll cut you all to pieces." These threats were not punishable for a breach of the peace because the statute itself was overbroad, failing to limit its application "to 'fighting' words defined by *Chaplinsky*." *Gooding*, 405 U.S. at 528, 92 S.Ct. 1103.

conviction for wearing jacket displaying the words "Fuck the Draft").

In *Chaplinsky*, the Supreme Court acknowledged:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

315 U.S. at 571–72, 62 S.Ct. 766. Note again the last clause: for punishment as disorderly conduct, all such words "by their very utterance," must "inflict injury" or, at the very least, "tend to incite an immediate breach of the peace," *id.* at 572, 62 S.Ct. 766 meaning a "hostile reaction" by one or more third parties (other than police officers)[8] to whom the words were directed. *Cohen*, 403 U.S. at 20, 91 S.Ct. 1780; *accord, Gooding*, 405 U.S. at 524, 92 S.Ct. 1103; *Chaplinsky*, 315 U.S. at 573, 62 S.Ct. 766. In interpreting the "breach of the peace" requirement of D.C.Code § 22–1321 in pure "words" cases, therefore, we do not perceive room for the alternative, undefined "nuisance" criterion announced in *Williams* that would permit conviction without threat of violence.[9] That possibility, we believe, has been eclipsed by the Supreme Court's later decisions in *Cohen* and *Gooding*, if not earlier by *Chaplinsky* itself.[10]

Because the government failed to prove that Martinez committed a breach of the peace, as required for conviction of disorderly conduct under D.C.Code § 22–1321, we must reverse her conviction and remand for entry of a judgment of acquittal.

---

8. *See supra* note 2.

9. Perhaps the "nuisance" alternative survives in non-speech cases. Without citing the 1969 *Williams* decision and its "nuisance" alternative, the U.S. Court of Appeals for the District of Columbia Circuit has opined that urinating in public would serve to justify probable cause for a police officer to believe that both an annoyance and a breach of the peace were occurring sufficient to warrant an arrest for disorderly conduct under D.C.Code § 22–1321. *United States v. Williams*, 754 F.2d 1001, 1002 (D.C.Cir.1985).

10. After *Cohen* and *Gooding* were decided, the U.S. Court of Appeals for the District of Columbia Circuit announced a 2–1 decision in *Von Sleichter v. United States*, 472 F.2d 1244 (1972). Applying the "nuisance" criterion from *Williams*, the court ruled that a police officer had probable cause to arrest the appellant for disorderly conduct when the appellant shouted "fuck you" at the officer, as pedestrians were in earshot, after the officer had called out, "I would like to talk with you a minute." Writing for the majority, Judge Leventhal distinguished *Gooding*, saying that the Supreme Court had focused exclusively on whether the applicable statute had been construed to limit its application to "fighting words" (as required by *Chaplinsky*). Judge Leventhal added that *Gooding* "does not discuss in any way the separate problem of the use in public of words so grossly offensive as to amount to a nuisance." *Id.* at 1247 n. 4. In dissent, Judge Wright rejected that reading of *Gooding*. The Supreme Court, he wrote,

> found the statute under which the defendant was prosecuted facially invalid. because its scope was not limited to "fighting words" likely to provoke immediate violence. [citing *Chaplinsky*]. In so doing the Court explicitly rejected the state's argument that it had an interest in preventing speech which was merely "offensive" even if it was unlikely to lead to immediate violence. A statute which "makes it a 'breach of peace' merely to speak words offensive to some who hear them * * * sweeps too broadly." [*Gooding*], 405 U.S. at 527, 92 S.Ct. 1103. I fail to understand how this holding [in *Gooding*] can be reconciled with the second branch of *Williams*, which makes punishable words "offensive to members of the public who actually overhear [them]." *Id.* at 1252. (Wright, J., dissenting).

We agree with Judge Wright.

*Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

*So ordered.*